# IN THE COURT OF APPEALS OF IOWA

No. 13-1120
Filed July 30, 2014

**BERT AXLINE,**
Petitioner-Appellant,

**vs.**

**ASHLEY WYLIE,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Cedar County, Nancy S. Tabor, Judge.

Bert Axline appeals from the district court order granting physical care of the parties' child to Ashley Wylie. **AFFIRMED AS MODIFIED.**

Mark D. Fisher of Nidey, Erdahl, Tindal & Fisher, Cedar Rapids, for appellant.

Ashley Wylie, Coralville, appellee pro se.

Considered by Doyle, P.J., Mullins, J., and Sackett, S.J.* Tabor, J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**SACKETT, S.J.**

Bert Axline appeals from the district court order granting physical care of his son to the child's mother, Ashley Wylie. He contends he should be granted physical care of the child. He also contends the visitation provisions of the order create an automatic modification provision, which is not in the child's best interest. Finally, he contends the court erred in reserving jurisdiction to enter a postsecondary education subsidy.

## I.     BACKGROUND FACTS AND PROCEEDINGS.

Bert and Ashley are the parents of a child born in August 2009. The undisputed record shows Ashley was the child's primary caretaker until the temporary visitation order was entered in this matter. Bert, who is a member of the Iowa National Guard, was deployed to Afghanistan from July 2010 until July 2011. Upon returning, Ashley allowed Bert to visit the child. Initially, visitation was one weekend per month, but was eventually increased to two weekends per month.

On February 19, 2012, Bert smelled marijuana when picked the child up for his weekend visit. He immediately took the child to a doctor for drug testing, and the initial test showed a positive result for cannabinoids. Bert contacted the Department of Human Services (DHS). Law enforcement officers were dispatched to conduct a safety check at the apartment Ashley shared with several family members and discovered marijuana in the home. As a result, Ashley was charged with possession of marijuana and pled guilty to possession of paraphernalia. A second drug test administered to confirm the child's

exposure to marijuana was negative, indicating the first test may have resulted in a false positive.

Although Ashley admits to having smoked marijuana, she denied smoking in the child's presence. However, due to his belief that Ashley was using marijuana, Bert did not return the child to her care or allow her contact with the child for approximately one month.

On February 24, 2012, Bert filed a petition for custody and visitation. Following an April 20, 2012 hearing, the court ordered temporary joint physical care of the child.

The trial was held on May 29, 2013, and the court entered its custody order on July 1, 2013. It ordered joint legal custody of the child, with Ashley receiving physical care. The order outlines two visitation schedules—one for if Ashley remains in Iowa and one in the event that the child's permanent residence is moved out of state with a distance of over 150 miles between the parties. It reserves the matter of "the appropriate amount of college subsidy that should be paid by the parties" for future determination.

## II.    SCOPE OF REVIEW.

Our review of equity cases is de novo. Iowa R. App. P. 6.907. We give weight to the findings of the district court, "especially when considering the credibility of witnesses," but are not bound by them. Iowa R. App. P. 6.904(3)(g). Generally, we give considerable deference to the district court's credibility determinations because the court has a firsthand opportunity to hear the

evidence and view the witnesses. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992).

## III.    ANALYSIS.

Bert seeks physical care of the child. He argues he has played an active role in the child's life, can provide the child with a safer and more stable home, and is better able to support the other parent's relationship with the child.

In making custody determinations, our primary consideration is the child's best interest. Iowa R. App. P. 6.904(3)(o). Our objective is to place the child in an environment likely to promote a healthy physical, mental, and social maturity. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). In considering what custody arrangement would be in the child's best interest, we consider the factors enumerated in Iowa Code section 598.41(3) (2011) and those set forth in *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974). *See In re Marriage of Daniels*, 568 N.W.2d 51, 55 (Iowa Ct. App. 1997). Some factors are given more weight than others, and the weight assigned to each factor turns on the particular facts of a case. *Id.*

Much of Bert's argument focuses on Ashley's alleged on-going substance abuse. While the evidence shows Ashley used marijuana up until her February 2012 arrest, there is insufficient evidence in the record to support a finding her use is ongoing. At the temporary custody hearing, Ashley testified her usage level since her involvement with the DHS was "zero" and she planned to continue abstaining. At trial, Ashley testified she had to pass a drug test for her employment and was subject to random drug testing. Although Ashley had

"liked" a website for marijuana users on her Facebook account, there is no evidence as to when this occurred, nor is it dispositive of ongoing marijuana use. Bert also alleges his mother found a marijuana pipe in the child's belongings, but the handwritten note on the envelope containing that evidence states indicates it was "received" on January 16, 2012, which predates Ashley's arrest. Ashley's boyfriend, Brad, has a conviction for possession of marijuana. However, his 2006 conviction is also insufficient to find Ashley continues to use marijuana.

Bert next argues he is better able to support the child's relationship with Ashley. The record shows the parties' relationship has been volatile and communication has been poor. Ashley testified she could only contact Bert through his wife, Shelbe, who did not always answer calls. Bert also failed to give Ashley the phone number of Shelbe's mother, who provides daycare for the child when he is in Bert's care. Most concerning is Bert's unilateral decision to prevent Ashley from seeing the child for one month due to concerns that Ashley was using marijuana, despite a negative result for exposure to marijuana on the child's confirmation test. Five days after the DHS investigation began, a DHS worker wrote the following in the child protective service assessment summary:

> I explained to Bert that at this time with no court order in place I could not make him return Logan to Ashley's [care]. I did inform him that at this time there were no further reasons to keep Ashley from Logan. I encouraged visitation and contact between Ashley and Logan.

Six days later, Ashley "reported that [Bert] has continued to not allow her to speak to Logan." While Bert's initial removal of the child was appropriate given the concern about Ashley's substance abuse, it was inappropriate to continue to

deny the child all contact with his mother, who up until that point had been his primary caretaker.

Finally, Bert expresses concern regarding Ashley's ability to provide a stable home for the child. He notes that Ashley has moved the child to several different residences within Iowa. However, Bert has also lived in several different residences in Iowa since the child's birth. Such moves are not unusual in today's "highly mobile society," which is why a move by one of the parties is not so unusual or substantial as to support a change in custody. *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa 1996)

Bert also expresses concern regarding Ashley removing the child from the state, citing Ashley's testimony that she planned to relocate to Colorado. He notes this is not the first time she has planned to move out of state, citing her testimony she had once thought she might move to Texas and had considered moving to Washington. Bert also claims she told him she planned to move to Arizona with her father during his deployment.

As of the time of trial, Ashley had never removed the child from the state. While Ashley testified she planned to move to Colorado in the near future, this move was still speculative, and the record regarding her plans is sparse. Ashley testified that Brad had been offered a job in Colorado and that she planned to move there with him at the end of July 2013. Brad testified that he was offered a job and a place to live in southern Colorado, and that he planned to travel to Colorado in mid-June to meet with his prospective, future employer and look at the residence. There is no evidence as to which city they were relocating to,

their living arrangements, the type of daycare Ashley had secured for the child, or the name of the school the child would attend. Ashley believed she could transfer her job, but she had not yet done so. While Ashley intended a July move at the time of trial, it may or may not have occurred based on any number of circumstances. A best-interest determination cannot be made based on the fact that Ashley planned to move in the future. *See In re Marriage of Schlenker*, 300 N.W.2d 164, 165 (Iowa 1981) (holding "trial courts should make final disposition of cases on the circumstances then existing"); *In re Marriage of Perry*, No. 04-293, 2004 WL 2168434, at *4 (Iowa Ct. App. Sept. 29, 2004) (holding a custody determination could only be based on the mother's residence at the time of trial, even though she testified she planned to move to Massachusetts). It would also be improvident to make a custody determination based upon a speculative move when, as here, there is insufficient evidence to determine the overall impact the move will have on the child. *See Dale*, at 245 (noting that in modification actions, the court typically focuses on the overall impact a move has on the children).

We are also mindful that a party may only modify the child custody provisions of a decree where there has been a substantial change in circumstances since the time of the decree *that was not contemplated by the court at the time the decree was entered*, is more or less permanent, and relates to the welfare of the child. *In re Marriage of Frederici*, 555 N.W.2d 156, 158 (Iowa 1983). Because we do not consider Ashley's possible move in our custody determination, any move of more than 150 miles occurring after the July 1, 2013 entry of the decree would be a proper basis for a modification action. *See* Iowa

Code § 598.21D (providing a move of 150 miles or more may be considered a substantial change in circumstances for modification purposes). The visitation schedule to be enacted in the event of a future move is also more appropriately considered in a modification action. Accordingly, we modify the order to eliminate the alternate visitation provision set to execute if Ashley moves out of state a distance of more than 150 miles.

Weighing the various factors the court is to consider when making custody determinations, we find it is in the child's best interest to grant Ashley physical care. She has been the child's primary caretaker. Though the parties had joint physical care of the child in the year leading up to trial, the evidence suggests that Shelbe, who had been married to Bert for six months after a ten-month courtship, provides the majority of the child's care. While both parties must improve in their ability to communicate and get along with each other for the child's sake, we affirm the grant of physical care to Ashley.

Finally, Bert contends the court erred in reserving jurisdiction to enter a postsecondary education subsidy. Because there is no common law or statutory right to such a subsidy for children born to unmarried parents, *see Jonson v. Louis*, 654 N.W.2d 886, 888 (Iowa 2002), we modify the order to eliminate the postsecondary education subsidy.

**AFFIRMED AS MODIFIED.**