**IN THE COURT OF APPEALS OF IOWA**

No. 15-1452
Filed April 27, 2016

**MATTHEW B. JOHNSON,**
        Petitioner-Appellee,

**vs.**

**MISTY M. HIRSCHFIELD,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Sac County, William C. Ostlund,

Judge.

Mother appeals decree establishing paternity, custody, visitation, and

support. **AFFIRMED.**

Gina C. Badding of Neu, Minnich, Comito, Halbur, Neu, & Badding, P.C.,

Carroll, for appellant.

Jessica Zupp of Zupp & Zupp Law Firm, P.C., Denison, for appellee.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Matthew Johnson and Misty Hirschfield are the never-married parents of their daughter A.R.J. (born 2011).  The parties cohabited but separated in May 2014, prior to Hirschfield's deployment to Afghanistan as part of her service in the National Guard.  In November 2014, Johnson filed his petition to establish paternity, custody, and visitation.  In December 2014, Hirschfield returned to the United States.  The district court awarded the parties joint legal custody of A.R.J., awarded physical care to Johnson, awarded Hirschfield regular visitation, and ordered Hirschfield to pay child support.  Hirschfield appeals the physical care determination, requesting she be awarded physical care of the child; in the alternative, she requests additional visitation time and an adjustment of her child support obligation.  She also requests appellate attorney fees.

I.

Johnson and Hirschfield met in 2009 while in Iraq on active duty service as part of the National Guard.  When the two returned to the United States, they moved to La Crosse, Wisconsin.  Hirschfield became pregnant with A.R.J. at the end of 2010, and the parties moved in with Hirschfield's mother in Soldier's Grove, Wisconsin.  A.R.J. was born in August 2011.  At some point between August 2011 and January 2012, the family moved to Readstown, Wisconsin.  During this time, Johnson was employed full-time.  Hirschfield was employed part-time at a restaurant and attended college.  Both parents provided care for A.R.J.

In June 2013, the parties learned Hirschfield's National Guard unit would deploy to Afghanistan in spring 2014, for up to one year.  Hirschfield's service

obligation was set to end in October 2013.  She was faced with the decision of reenlisting or concluding her service with the National Guard.  Hirschfield spent considerable time in making her decision.  She made a pros and cons list.  She discussed the choice with her family, Johnson, and Johnson's family.  The parties disagree on whether Johnson supported Hirschfield reenlisting.  She testified he told her he would support her "one hundred percent of the way."  He testified, "I told her I would support her decision because that's what a good significant other would do."  He also testified that, given the same choice to make, he would have stayed home to raise their daughter.  Hirschfield decided to reenlist in the National Guard.

In December 2013, the three moved in with Johnson's parents in Odebolt, Iowa.  Johnson and Hirschfield decided to move to Odebolt so Johnson would have family resources to assist with the care of A.R.J. while Hirschfield was deployed.  In April 2014, Hirschfield left for pre-deployment training in Wisconsin.  From Wisconsin, she went to Texas for two months of further training.  While in Texas, Hirschfield called Johnson and ended their relationship.

Hirschfield served in Afghanistan from June to December 2014.  When Hirschfield returned to the United States, she immediately moved to Tomahawk, Wisconsin, with Joe Bergsrud.  Hirschfield met Bergsrud in October 2013 while at National Guard training in Wisconsin.  They served in Afghanistan together.  They commenced an intimate relationship at some point, but the record is not clear as to when.

By the time of Hirschfield's return, Johnson also had a new paramour, Kate Olson.  Olson was studying pharmacology and experimental neuroscience

at the University of Nebraska Medical Center in Omaha. She intended to either work for a pharmaceutical company or become a medical science liaison. Johnson and Olson have known each other since they were children, but they started dating in August 2014.

The district court issued its ruling on July 31, 2015. The court awarded physical care of A.R.J. to Johnson, writing, "He has been a constant factor in his daughter's life, is acknowledged to be a good father, has significant extended family assistance, has all the earmarks of stability, and has pledged his willingness to exist in a continued relationship for A.R.J. with [Hirschfield]."

II.

Our review of cases heard in equity, such as custody proceedings, is de novo. *See* Iowa R. App. P. 6.907. We review the entire record and decide anew the factual and legal issues presented. *See In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Prior cases have little precedential value; the court must make its determination based on the unique facts and circumstances of each case. *See In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995); *In re Marriage of Snowden*, No. 14–1920, 2015 WL 4233449, at *1 (Iowa Ct. App. Jul. 9, 2015) ("All happy families are alike; each unhappy family is unhappy in its own way." (quoting Leo Tolstoy, *Anna Karenina* 1 (1873))). "[W]e give considerable weight to the sound judgment of the trial court who has had the benefit of hearing and observing the parties firsthand." *Kleist*, 538 N.W.2d at 278.

III.

Physical care is defined as "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." Iowa Code § 598.1(7) (2013). In making the physical care determination, we look to the factors set forth in Iowa Code section 598.41(3) and our case law. *See* Iowa Code § 598.41(3); *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). "Each factor, however, does not necessarily impact the decision with equal force." *In re Marriage of Daniels*, 568 N.W.2d 51, 54 (Iowa Ct. App. 1997). In considering the factors, our ultimate objective "is to place the child in the environment most likely to bring [her] to healthy mental, physical, and social maturity." *McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010). The controlling consideration is the child's best interest. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Physical care issues are not to be resolved based upon perceived fairness to the parents, but upon what is best for the child. *Id.*

Factors to consider include the approximation rule, which attempts to place the caregiving of parents in the post-separation world in rough approximation to that of the pre-separation arrangement; the parties' abilities to communicate and show mutual respect; the degree of conflict between the parties; and the parties' agreement about their approach to daily matters. *See id.* at 696-700. Regarding the approximation factor specifically, if both parents took on the role of primary caregiver, the factor does not favor either. *See, e.g., Arguello v. Harkins*, No. 05-0318, 2006 WL 334238, at *1 (Iowa Ct. App. Feb. 15, 2006) (finding approximation factor favored neither parent where, prior to

separation, mother had first been primary caregiver for a period of years, followed by father for a period of several months). We also consider:

1. The characteristics of each child, including age, maturity, mental and physical health.
2. The emotional, social, moral, material, and educational needs of the child.
3. The characteristics of each parent, including age, character, stability, mental and physical health.
4. The capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child.
5. The interpersonal relationship between the child and each parent.
6. The interpersonal relationship between the child and its siblings.
7. The effect on the child of continuing or disrupting an existing custodial status.
8. The nature of each proposed environment, including its stability and wholesomeness.
9. The preference of the child, if the child is of sufficient age and maturity.
10. The report and recommendation of the attorney for the child or other independent investigator.
11. Available alternatives.
12. Any other relevant matter the evidence in a particular case may disclose.

*Winter*, 223 N.W.2d at 166-67.

On de novo review, we consider all of the relevant factors set forth in Iowa Code section 598.41(5) and *Marriage of Winter*, and we conclude that awarding Johnson physical care of A.R.J. and granting Hirschfield liberal visitation is in the long-term best interests of the child. In the interest of brevity, rather than reiterating the findings and conclusions of the district court in full herein, we choose to discuss several items of particular import.

First, this is a close case. Many of the factors relevant to the physical care decision are in relative equipoise. To the extent that any factor militates in favor of physical care being placed with one parent over the other, the factor demonstrates only a weak preference and not a strong one. It is clear both

parents love A.R.J. It is clear either parent could provide for the emotional, social, moral, material, and educational needs of the child. *See Winter*, 223 N.W.2d at 166. It is clear each parent will support the other's relationship with A.R.J. *See* Iowa Code § 598.41(3)(e). This has been demonstrated by the parties' successful joint physical care arrangement from the time of Hirschfield's return through trial. The current arrangement is unworkable in the long-term when A.R.J. commences school due to the distance between the parties. We thus must choose.

Several factors weigh in favor of awarding physical care of A.R.J. to Johnson. First is the weight placed on the parties' care arrangement prior to the time of this action. While Hirschfield's decision to reenlist is admirable, Johnson provided sole physical care for the child in her absence. While her absence was not of great duration, it was significant given the young age of the child. Second, awarding Johnson physical care minimizes disruption in the child's life. The child has resided in Iowa since December 2013 when the parties jointly decided to move because of Johnson's family support in the area. Third, Johnson's family has built a relationship with the child and can be an ongoing source of stability and support for the child.

The district court, with its unique ability to assess witness demeanor, was in the best position to determine which of these two good parents should have physical care of A.R.J. *See In re Marriage of Roberts*, 545 N.W.2d 340, 343 (Iowa Ct. App. 1996) ("[I]n the end we determine this to be a close case, for both parents love their children very much and each is capable of providing for their long-range best interests. In situations such as this, we note the district court

had the parties before it and was able to observe and evaluate the parties as custodians."). We affirm the district court on the issue of physical care of the child. *See, e.g., Crawford v. Rosen*, No. 14–1466, 2015 WL 2393689, at *4 (Iowa Ct. App. May 20, 2015) (awarding physical care to father where mother unilaterally moved to pursue career opportunity and the move would have uprooted children from their community).

Hirschfield asks us to amend the visitation schedule in this matter to provide her visitation for the entirety of the child's Thanksgiving and Christmas vacations from school. In the current order, those breaks are divided in half, with each party seeing the child during the break. We decline to adopt this proposal, and affirm the visitation schedule.

Hirschfield requests an award of appellate attorney's fees. An award of appellate fees is not a matter of right but rests in this court's discretion. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). We consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *Id.* We have considered those factors and decline to award fees in this matter.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**