## IN THE COURT OF APPEALS OF IOWA

No. 16-0692
Filed June 29, 2016

**IN THE INTEREST OF C.S.J.,**
**Minor Child,**

**L.M.J., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Craig M. Dreismeier, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Vanessa E. Strazdas of Strazdas Law, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Roberta J. Megel of the State Public Defender's Office, Council Bluffs, for minor child.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

A father appeals the termination of his parental rights to his two-year-old daughter, C.J. He claims the State failed to prove the statutory grounds for termination by clear and convincing evidence. Because the State established the child could not be safely returned to her father's custody under Iowa Code section 232.116(1)(h) (2015), we affirm.[1]

The Iowa Department of Human Services (DHS) removed C.J. from the custody of her father and mother in May 2015 after both parents tested positive for methamphetamine. The parents denied personal usage but admitted being around people who smoked methamphetamine. The juvenile court adjudicated C.J. as a child in need of assistance (CINA) in July 2015 under Iowa Code section 232.2(6)(c)(2) and (n).

Following the CINA adjudication, the father participated in random drug screens and completed a substance abuse evaluation, which did not recommend further treatment.[2] Both parents participated in services and had frequent visitation with their daughter during the summer of 2015. Because visitation was going well, the DHS arranged for a trial home placement in late August 2015. But after only two days, the DHS again removed the child because the parents continued to associate with active drug users and allowed C.J. to be exposed to those individuals. Both parents refused to sign the DHS safety plan. The

---

[1] We review termination proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "'We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses.'" *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). Clear and convincing evidence must support the termination. *Id.* Evidence is clear and convincing when we have no serious or substantial doubts as to the correctness of conclusions of law drawn from it. *Id.*

[2] The father told case workers he had a "coke" habit and cocaine was his drug of choice. He did not believe he was addicted to drugs but admitted enjoying "the lifestyle."

father's relationship with a new DHS worker soured. When the worker asked for drug-patch testing, he yelled obscenities at her and told her "your patches are bullshit."

Since the second removal on August 28, 2015, C.J. has not returned to her parents' care. During the fall of 2015, the father again participated in services—but made little progress in addressing concerns about his involvement with methamphetamine. A November 2015 review hearing revealed the father completed another substance abuse evaluation; but again no further treatment was recommended. The father agreed to wear a drug patch but then improperly returned it to the testing facility in a Baggie in a wet condition. The results of the test came back positive for methamphetamine and amphetamine. Because of the positive drug test, visitation returned to being fully supervised. The father had two two-hour visits per week. The father grew inconsistent in these visits—often arriving late, not being attentive to C.J. during their time together, and attending only about one-half of the scheduled sessions.

In January and February of 2016, the DHS continued to be concerned about the father's drug use and association with other drug users. In addition, issues of domestic violence and unstable housing arose. The police arrested the father for punching the mother in the face, and the court issued a no-contact order. Despite the order, the parents continued to live together in transitional housing—until they received notice to vacate their apartment on January 22, 2016.

The State filed a petition for termination of parental rights on February 22, 2016. The juvenile court held a termination hearing on March 30. The father

appeared for the hearing, but the mother did not.[3]  The child's guardian ad litem spoke in favor of granting the termination petition.  On April 7, 2016, the court issued an order terminating the father's parental rights under section 232.116(1)(e), (h), and (*l*).  The father now appeals.[4]

When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground supported by clear and convincing evidence.  *In re D.W.*, 791 N.W.2d at 707.  In this case, we find clear and convincing evidence to support termination under section 232.116(1)(h).  That provision requires proof of four elements: (1) the child is three years old or younger, (2) the child has been adjudicated CINA, (3) the child has been out of the parent's custody for at least six of the last twelve months or the last six consecutive months, and (4) there is clear and convincing evidence the child cannot be returned to the custody of her parents as provided in section 232.102 at the present time.  Iowa Code § 232.116(1)(h).  The father does not challenge the first three elements, only that C.J. cannot be returned to his care at the present time.

The father argues domestic violence is no longer a concern because the mother reportedly moved out of state.  He also claims the record did not show he used illegal substances while C.J. was in his care.

We are not persuaded by his arguments.  After our de novo review of the record, we reach the same conclusion as the juvenile court—termination was

---

[3] The mother's attorney did not know her whereabouts; the State believed the mother had moved to Colorado.

[4] The court also terminated the mother's parental rights, but she is not a party to this appeal.

appropriate under subsection (h). The father has not made sincere efforts to confront his involvement with illegal drugs. The father downplayed his need for treatment, though he admitted using drugs and tested positive for methamphetamine during the CINA proceedings, including a few months before the termination hearing. He also continued to associate with known drug users. We have repeatedly held a parent's unresolved drug addiction may stand in the way of reunification with his or her child. *See, e.g.*, *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012); *In re N.F.,* 579 N.W.2d 338, 341 (Iowa Ct. App. 1998).

In addition, the father failed to address his domestic violence issues. The mother's move to another state does not absolve the father of the responsibility for correcting his violent tendencies. *See In re Marriage of Daniels*, 568 N.W.2d 51, 55 (Iowa Ct. App. 1997) ("Domestic abuse is, in every respect, dramatically opposed to a child's best interests."). Finally, the father's housing was uncertain at the time of the termination hearing.

The juvenile court summarized it best:

> [E]ach parent has been given sufficient time to work on resolving the issues which brought them before juvenile court. Initially, the parents were compliant and they worked their way back to having [C.J.] returned to them. Unfortunately, this lasted two days and she was again removed. Since the second removal, [the parents] have simply not put forth the effort to address their respective issues. It is not realistic to believe either parent will change his[] behavior[] within the next few months to lead this Court to conclude reunification is possible within a short period of time. To place this child with either parent now or in the near future would subject this child to abuse and/or neglect.

With this history in mind, we affirm the termination under section 232.116(1)(h). Because the father does not raise challenges under sections 232.116(2) or (3), we will rely on the juvenile court's analysis of those provisions.

**AFFIRMED.**