# IN THE COURT OF APPEALS OF IOWA

No. 16-1548
Filed November 9, 2016

**IN THE INTEREST OF N.W.,**
**Minor Child,**

**W.L.W., Father,**
　　Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Mary L. McCollum Timko, Associate Juvenile Judge.

A father appeals the juvenile court order terminating his parental to his two-year-old daughter. **AFFIRMED.**

Andrew J. Twinamatsiko of Crary, Huff, Ringgenberg, Hartnett & Storm, P.C., Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Janet L. Hoffman, Assistant Attorney General, for appellee State.

Matthew R. Metzgar of Rhinehart Law, P.C., Sioux City, guardian ad litem for minor child.

Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

A father who was incarcerated—first in Nebraska and then in Iowa on charges stemming from domestic abuse and violations of a no-contact order—appeals the juvenile court's order terminating his parental rights to his two-year-old daughter, N.W. He first alleges the juvenile court mistakenly limited his presentation of evidence concerning the circumstances of his Nebraska incarceration. We find no abuse of discretion in the court's evidentiary rulings. He next challenges the statutory grounds for termination and additionally argues termination was not in N.W.'s best interests. Because the State proved the elements of Iowa Code section 232.116(1)(h) (2015) by clear and convincing evidence and the record shows termination of the father's rights will protect the child and promote her long-term welfare, we affirm.[1]

N.W.'s father and mother were never married. Their relationship was punctuated by a pattern of mutual physical and verbal abuse, often carried out in the presence of their young daughter. The juvenile court authorized removal of N.W. from her parents' care in November 2015. At the time of removal, the father reported being homeless though he spent time at the mother's apartment. The day after the removal hearing, law enforcement stopped the parents' car. The mother was arrested for possession of marijuana, and the father was arrested for violating a no-contact order, providing false information, and driving

---

[1] We perform a de novo review of orders terminating parental rights. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). While they are not binding on us, we give weight to the juvenile court's findings of fact, especially in assessing the credibility of witnesses. *See id.* We will look to see if the record contains clear and convincing evidence of the grounds alleged under Iowa Code section 232.116. *See id.* Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence." *Id.*

while his license was suspended. The State filed an application to revoke the father's probation due to the new charges.

The father attended supervised visits with his daughter in November 2015, but he often failed to provide food and diapers, saying he lacked the money to buy them. On one visit in late November 2015, the thirty-four-year-old father asked to leave early, telling the social worker his daughter had "worn him out."

The juvenile court adjudicated N.W. as a child in need of assistance (CINA) on December 4, 2015. As part of the process for ensuring N.W.'s safety, the court directed the father to submit to random drug testing and to participate in anger-management therapy. Less than two weeks later, authorities in South Sioux City, Nebraska arrested the father for an incident of domestic abuse during which he entered the mother's apartment without permission, refused to leave, and slammed the door into the mother's foot, causing injuries. The father remained in the Dakota County jail for eighty-eight days.

During the father's incarceration, the Iowa Department of Human Services (DHS) did little to move him toward reunification with N.W. Case manager Mary Kay Renken testified she had not visited with the father for several months, probably not since January 2016, and she told his attorney in February 2016 there was "nothing she could offer" the father as far as services while he was incarcerated out of state. The case worker did receive heartfelt letters and drawings from the father addressed to N.W.; the worker kept the communications in the case file because she believed the child was too young to appreciate them.

In March 2016, the juvenile court found aggravated circumstances existed and waived the requirement for the DHS to provide reasonable efforts toward

reunification between N.W. and her parents. In May 2016, the State filed a petition alleging the father's parental rights should be terminated based on the following grounds—Iowa Code section 232.116(1)(b), (d), (e), (h), (i) and (*l*).

The father entered the correctional facility in Rockwell City in July 2016. He expected to appear in front of the parole board in September 2016 and anticipated discharging his sentence in January 2017. Because of his incarceration, the father appeared telephonically at the August 15 termination hearing. He acknowledged as part of the DHS case plan he was ordered to undergo anger management, batterer's education, and substance abuse evaluations and treatment, but he had yet to complete those programs.

During the father's testimony, his attorney started to ask him about the strength of the Nebraska prosecution against him. The State objected, contending the father's reasons for pleading guilty were "not relevant to these proceedings." The father's counsel countered: "The State has maintained that [the father's] actions led him into this situation, and we would like to highlight some of the things that were beyond his control that prevented him from following through with what was required of him." The court sustained the objection in part, allowing the father to say "he's maintained his innocence" but not permitting him to try his criminal case in the child-welfare proceedings. On appeal, the father argues the court's evidentiary ruling denied him the chance to show "why his failure to participate in services was due to factors beyond his control."

We review evidentiary rulings for an abuse of discretion. *See In re E.H. III*, 578 N.W.2d 243, 245 (Iowa 1998). Here, we cannot say it was an abuse of discretion for the juvenile court to limit the father's evidence to a general denial of

culpability in the matter that led to his Nebraska incarceration, rather than going "too far afield" concerning the specific evidence the prosecution would have presented had the father not accepted the plea deal.

On August 22, 2016, the juvenile court filed its termination order, citing section 232.116(1)(b), (e), (d), (h), (i) and (*l*).[2] The court reasoned termination of the father's parental rights was in N.W.'s best interests, allowing her the opportunity to grow up in "a safe, healthy, and stimulating environment."

In his petition on appeal, the father challenges all six statutory grounds for termination cited by the juvenile court. When the juvenile court bases its termination decision on more than one subdivision of section 232.116(1), we may affirm by finding clear and convincing evidence in support of any one of the identified provisions. *See D.W.*, 791 N.W.2d at 707.

We find clear and convincing evidence supported termination under section 232.116(1)(h). The juvenile court correctly determined N.W. was younger than three years of age, had been adjudicated a CINA, was out of the home for more than six months, and could not be placed in her father's care without risking the kind of harm that prompted CINA adjudication. *See* Iowa Code § 232.116(1)(h). The father was incarcerated at the time of the termination hearing and was not presently able to care for his daughter. Incarceration does not justify an inability to carry on the duties of parenting.[3] *See generally In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993).

---

[2] The order also terminated the parental rights of N.W.'s mother, who is not a party to this appeal.

[3] The case manager's testimony revealed the DHS made lackluster efforts to provide the father with reasonable reunification services while he was incarcerated. *See In re S.J.*,

Having determined a statutory ground for termination was satisfied, we turn to the father's assertion that severing the father-daughter bond does not serve N.W.'s best interests. *See* Iowa Code § 232.116(2). In determining best interests, we must consider the child's safety, the best placement for furthering her long-term nurturing and growth, and her physical, mental, and emotional condition and needs. *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). Our consideration of these factors leads us to conclude termination would promote N.W.'s well-being in both the short term and the long run.

The father argues termination occurred while the DHS was still exploring the possibility of placing N.W. with his biological mother in Georgia. He also points out he has two older daughters who live in Georgia, and while N.W. has never met them, the father contends N.W. would benefit from getting to know her sisters. The father may be right about the benefits of developing N.W.'s kinship relationships. But we cannot say those possible benefits outweigh the importance of establishing security and stability for this two-year-old child, who has not had contact with her father since December 2015.

Moreover, the record is replete with the father's commission of domestic violence, which has impacted the well-being of his young child. *See In re Marriage of Daniels*, 568 N.W.2d 51, 55 (Iowa Ct. App. 1997) ("Domestic abuse is, in every respect, dramatically opposed to a child's best interests."). We also consider a parent's arrests and incarcerations in determining whether return of a child to a parent would result in harm. *See In re S.J.*, 620 N.W.2d at 526. Here,

---

620 N.W.2d 522, 525 (Iowa Ct. App. 2000). But the father does not mount a reasonable-efforts challenge in this appeal.

the father has repeatedly shown disregard for court orders prohibiting his contact with the mother, resulting in additional charges and prison sentences. He also failed to complete batterer's education. We find N.W.'s safety and long-term nurturing would be best accomplished by terminating the father's rights and allowing her to move toward adoption.

**AFFIRMED.**