**IN THE COURT OF APPEALS OF IOWA**

No. 16-0404
Filed December 21, 2016

**RANESSA HOGGATT,**
      Petitioner-Appellee,

**vs.**

**NEAL DONOVAN WALTON,**
      Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.

Neal Walton appeals the district court order granting Ranessa Hoggatt physical care of their children. **AFFIRMED.**

Colin R. McCormack of Van Cleaf & McCormack Law Firm, L.L.P., Des Moines, for appellant.

Christopher R. Kemp of Kemp & Sease, Des Moines, for appellee.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VAITHESWARAN, Judge.**

A father appeals a custody decree granting the mother physical care of their children.

## I.   *Background Facts and Proceedings*

Our de novo review of the record reveals the following facts.  Neal Walton and Ranessa Hoggatt had three children during the eight years that they lived together in Des Moines.  Hoggatt testified she moved out because Walton "was very abusive and controlling."  Walton testified Hoggatt "ran out" on him and "never reentered."  Although he stated he cared for the children continuously from 2004 to 2011, he admitted he was in prison or jail for part of that time and, at some point, he injured his back and transferred the children to Hoggatt's care.

Hoggatt settled in Cedar Rapids with the children.  In March 2014, Walton picked the children up from school and took them to Des Moines after learning that one of them came to school with bruises.  The department of human services investigated and confirmed a bruise on the child but declined to confirm Hoggatt as the responsible person and declined to place the assessment on the child abuse registry.

According to Hoggatt, Walton did not allow her to have contact with the children for the rest of 2014.  After Walton took the children, she filed a petition to establish custody.  Towards the end of the year, the district court granted her temporary physical care of the children and afforded Walton temporary visitation.

Shortly before the custody trial, the department of human services investigated Hoggatt for another incident of physical abuse.  This time, the department issued a founded notice of child abuse assessment naming Hoggatt

as the responsible person. The department required a service provider to visit the mother's home for fifteen days. After this period, the mother agreed to voluntary services to address the abuse finding.

Following trial, the district court granted Hoggatt physical care of the children, subject to visitation with Walton. Walton appealed.

## II. Physical Care

Walton admits "[t]his case is a close call," given the parents' "less-than-perfect backgrounds." He contends, however, that the founded child abuse report, Hoggatt's refusal to afford him visits with the children for several weeks, and her refusal to provide "basic information about the minor children's education" warrant reversal of the custody decision.

Both parents had failings. Hoggatt had a 2012 conviction for forgery for which she served eight days in jail. But Walton had two convictions for domestic abuse assault, a factor to be used "in determining the custodial parent." *See In re Marriage of Daniels*, 568 N.W.2d 51, 54 (Iowa Ct. App. 1997). At trial, Walton denied that he committed domestic abuse, notwithstanding the two convictions on his record. His efforts to minimize his assaultive conduct give us pause. *See id.* at 55 ("A child who grows up in a home plagued with battering can, in many significant ways, be scarred for life. Thus, spousal abuse discloses a serious character flaw in the batterer, and an equally serious flaw in parenting."). Although Hoggatt testified that Walton did not physically abuse the children in the same way he abused her, this court has commented on the "ravaging and long-term consequences of domestic abuse on children." *Id.*; *Wilker v. Buse*, No. 07-1790, 2008 WL 4525757, at *6 (Iowa Ct. App. Oct. 1, 2008) (same).

Notably, Hoggatt testified Walton took a "paddle" to the children. Although a department child protective worker stated the agency ran "across a fair share of parents" who believed in corporal punishment and Walton was not cited for child abuse, Walton's history of domestic abuse together with his physical discipline of the children lead us to question his assertion that he "ha[d] the clear advantage" in the physical care determination.

That said, Hoggatt's physical discipline exceeded acceptable bounds. This fact alone would counsel in favor of reversal. However, Hoggatt agreed to voluntary services and the district court made an implicit finding of credibility in her favor. Specifically, the court found the physical care issue "to be close" but ultimately concluded the mother was "better equipped to handle the physical and emotional needs of" the three children. We give weight to the court's findings, in light of the court's ability to see and hear the witnesses. *See In re Marriage of Dodson*, No. 11-0146, 2011 WL 5867934, at *2 (Iowa Ct. App. Nov. 23, 2011); *Wilker*, 2008 WL 4525757, at *3.

We turn to Walton's contention that Hoggatt denied him visitation. "A parent's denial of visitation without just cause is a significant factor in determining the proper custody arrangement." *Daniels*, 568 N.W.2d at 56. The record reflects each parent denied the other visits with the children. Accordingly, this factor does not favor either parent.

We are left with Walton's contention that Hoggatt failed to convey educational information to him. Walton admitted he had "not lately" requested this information. But his contention implicates the larger question of the parents' ability to communicate with each other. Both parents conceded difficulties in this

area. The parents were required to overcome these difficulties. Specifically, the custody decree obligated them to "consult with each other regarding the education, religious training, medical care, extracurricular activities, and all other matters related to the children." And, because Hoggatt had physical care of the children, she was responsible for transmitting information about school events to Walton. *See In re Marriage of Fortelka*, 425 N.W.2d 671, 673 (Iowa Ct. App. 1988) ("The parent having physical care will be the one receiving information on school events, getting conference slips and report cards. These should be shared with the other parent."). We decline to reverse the physical care decision based on Hoggatt's failure to notify Walton of the children's educational activities. However, we note that Hoggatt as well as Walton have an obligation to abide by the terms of the custody decree.

We affirm the district court's physical care determination.

**AFFIRMED**.