In re the MARRIAGE OF Michele Renae
BARRY and Kevin Chauncey Barry.

Upon the Petition of Michele
Renae Barry, Appellant,

And Concerning Kevin Chauncey
Barry, Appellee.

No. 98–157.

Court of Appeals of Iowa.

Nov. 30, 1998.

Michael L. Mollman of Mollman Law Office, Cedar Rapids, for appellant.

Karen A. Volz of Ackley, Kopecky and Kingery, Cedar Rapids, for appellee.

Heard by SACKETT, C.J., and HUITINK and VOGEL, JJ.

VOGEL, J.

Michele Barry appeals the custodial provisions of the parties' dissolution decree. We affirm.

***Background facts.*** Kevin Chauncey Barry (Chauncey) and Michele Barry were married in 1989. Two children were born to the marriage: Kevin Jr., born in 1990, and Alex, born in 1992. Michele also had two children from previous marriages, Nathan, born in 1978, and Andrea, born in 1983, who resided with the parties for most of their marriage. In 1996, the parties' relationship began to deteriorate, and Michele filed a petition for dissolution of marriage in January of 1997.

Trial was held in September of 1997. The district court entered a decree which granted the parties joint custody of the children, with Chauncey having primary physical care. The court denied Michele's motion to reconsider and motion for a new trial. Michele now appeals.

■ ***Scope of review.*** In this equity action, our review is de novo. Iowa R.App. P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek,* 305 N.W.2d 448, 453 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of the witnesses, but are not bound by them. Iowa R.App. P. 14(f)(7).

■ ***Primary physical care.*** In assessing an issue of child custody, the controlling consideration is the interest of the children. *In re Purscell,* 544 N.W.2d 466, 468 (Iowa App.1995). The court determines placement according to which parent can minister more effectively to the children's long range best interests. *In re Marriage of Buttrey,* 538 N.W.2d 322, 324 (Iowa App. 1995) (citing *In re Marriage of Vrban,* 359 N.W.2d 420, 424 (Iowa 1984)). The court's objective is to place the children in the environment most likely to bring them to a healthy physical, mental, and social maturity. *In re Marriage of Kunkel,* 555 N.W.2d 250, 253 (Iowa App.1996). The critical issue in determining the best interests of the child is which parent will do better in raising the child; gender is irrelevant, and neither par-

ent should have a greater burden than the other. *In re Marriage of Courtade*, 560 N.W.2d 36, 38 (Iowa App.1996).

We identify numerous factors to help determine which parent should serve as the primary caretaker of the children in a divorce. *In re Marriage of Daniels*, 568 N.W.2d 51, 54 (Iowa App.1997) (citation omitted); *see* Iowa Code § 598.41 (1997). Some factors are given greater weight than others, and the weight ultimately assigned to each factor depends on the particular facts of each case. *See Daniels*, 568 N.W.2d at 54; *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992).

■ Michele contends that the district court's decision to award primary care to Chauncey is not in the best interests of the children and is not supported by evidence in the record. She first argues that the court failed to take into account Chauncey's physical abuse of herself, her son Nathan, and their son Kevin.

■ Pursuant to Iowa Code section 598.41 and prior case law, domestic abuse is a factor in determining the custodial parent. *See Daniels*, 568 N.W.2d at 54; *see also In re Marriage of Brainard*, 523 N.W.2d 611, 614–15 (Iowa App.1994). Domestic abuse is, in every respect, dramatically opposed to a child's best interests. *Daniels*, 568 N.W.2d at 55.

At trial, Chauncey admitted to instances of physical aggression with Michele and his stepson, Nathan. He denied, however, ever abusing their son, Kevin. Chauncey characterized the incidents with Nathan as defensive in nature, as Nathan, age eighteen at the time, was a foot taller than Chauncey and weighed more than twice as much. Chauncey also admitted to a few instances in which he became physical during arguments with Michele. He admitted to choking her on two occasions and shoving her into a mirror on another. He maintained, however, that Michele was equally aggressive in picking the fights and was verbally and physically abusive toward him. Michele conceded that she participated physically in these fights, and admitted to once putting her hands around

Chauncey's neck when she was angry and the aggressor.

■ We do not minimize the seriousness of domestic violence and the negative impact it has on children. However, we also recognize some relationships are mutually aggressive, both verbally and physically. In those situations, a claim of domestic violence must not be used by either party to gain an advantage at trial, but should be reserved for the intended purpose—to protect victims from their aggressors.

In this case, the trial court recognized that the aggressive behavior was mutual and we give deference to the trial court's first-hand observations of the parties' demeanor at trial. On our de novo review of record, we agree that the aggressive behavior was mutual.

We also note that the allegations of abuse surfaced for the first time during the dissolution proceedings; none of these incidents were reported to the police and neither party ever sought a protective order. In addition, Michele's concerns about Chauncey's temper and her fear of future abuse are in contradiction with her actions and her testimony at trial. Michele agreed to a joint care arrangement, and left the children in Chauncey's care when she moved out of the home at the end of their relationship. It is irreconcilable for Michele to fear that Chauncey would hurt Kevin or Alex yet leave the boys in Chauncey's care. Finally, and most revealing, Michele testified that she didn't believe Chauncey would ever hurt the children.

■ Michele next asserts that Chauncey has interfered with her visitation and access to the children. The denial by one parent of a child's opportunity to have meaningful contact with the other parent is a significant factor in determining the custody or physical care arrangement. *See Will*, 489 N.W.2d at 399; *see also* Iowa Code § 598.41(1)(c). Michele asserts that she is not being allowed the visitation ordered under the decree and points to specific occasions when her visitation was cut short or missed completely. We find the visitation complaints were minimal and readily rectified. Moreover, Michele admitted that the missed visitation had been made up and that

she had actually received more visitation than ordered.

■ Finally, Michele asserts that it is in the children's long-term best interests to be in her primary care. She argues that Chauncey is temperamental, emotionally unstable, and made threats of suicide while their dissolution was pending. Chauncey testified that his threats were not serious, but were made in an attempt to try to manipulate Michele during a very stressful period in their break-up. Chauncey also accused Michele of emotional instability and inability to cope. We note that both parties were under medication for either depression or anxiety at the time of trial.

Despite Chauncey and Michele's negative characterizations of each other at trial, both admitted that the other was a loving parent capable of caring for the children. Of this we have no doubt. However, after reviewing the record, we agree with the trial court that Chauncey should have primary care.

Chauncey has demonstrated a strong commitment to the children throughout the marriage and dissolution. When Chauncey and Michele worked different shifts during the marriage, they shared the role as primary caretaker; however, Chauncey once quit his job to take care of the children full-time for seven months when they had trouble finding reliable daycare. Chauncey also decided not to pursue an out-of-state job offer he received after the parties' separation in order to keep the children in their school district, and testified to his continuing commitment to stay in their community so the children may attend the same school and daycare.

In contrast, Michele ended the marriage in part to pursue a new relationship and left the children in Chauncey's care. She also failed to attend the court-ordered "Children Cope with Family Transitions" class, because, as she argues, she was attending other counseling. We do not find her explanation satisfactory.

In addition, Chauncey has the support of his extended family, and supported the children's continuing relationship with Michele's extended family. Michele's relationship with her family is strained. We believe it is in the children's long-term best interests to remain in the primary care of Chauncey.

■ *Attorney fees.* Chauncey requests that he be awarded appellate attorney fees. An award of attorney fees on appeal is not a matter of right, but rests within the discretion of the court. *In re Marriage of Benson,* 545 N.W.2d 252, 258 (Iowa 1996). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *In re Marriage of Wood,* 567 N.W.2d 680, 684 (Iowa App.1997). We decline to award appellate attorney fees in this case. Costs of this appeal are to be split equally between the parties.

Having considered all arguments properly before us on appeal, we affirm the district court's decree.

**AFFIRMED.**