# IN THE COURT OF APPEALS OF IOWA

No. 4-062 / 13-1135
Filed March 12, 2014

IN RE THE MARRIAGE OF NICHOLE LEIGH SEVERSON
AND RUSSELL NEIL SEVERSON II

Upon the Petition of
**NICHOLE LEIGH SEVERSON,**
    Petitioner-Appellee,

**And Concerning**
**RUSSELL NEIL SEVERSON II,**
    Respondent-Appellant.
_____

    Appeal from the Iowa District Court for Sioux County, Jeffrey L. Poulson,

Judge.


    A father appeals the district court's denial of his application to modify the

physical care provisions of the decree dissolving his marriage.  **AFFIRMED.**


    Harold D. Dawson of DeKoter, Thole & Dawson, P.L.C., Sibley, for

appellant.

    Timothy J. Kramer of Kramer Law Firm, P.L.C., Sioux Center, for appellee.


    Considered by Vogel, P.J., and Tabor, J., and Eisenhauer, S.J.*

    *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**VOGEL, P.J.**

Russell Severson appeals the district court's denial of his application to modify the physical care provisions of the decree dissolving his marriage to Nichole Severson. Russell asserts he should be granted physical care of the parties' three children due to the children's expressed desire to live with him, his concerns for the children's safety, Nichole's occasional failure to provide him his visitation rights, and Nichole's failure to communicate information about the children to him. Because we agree with the district court's conclusion that there has not been a substantial change in circumstances and Russell has not shown he can provide superior care, we affirm the district court's decision.

## I. Background Facts and Proceedings.

Russell and Nichole settled their dissolution proceeding by filing a stipulation and agreement, which was approved by order entered by the district court in April 2011. The stipulation provided the parties would have joint legal custody with physical care of the parties' three children[1] to be placed with Nichole. Russell would have visitation every other weekend as well as various mid-week visitation. Russell was also granted six weeks of visitation during the summer.

Following the dissolution, Nichole began living with Daniel Geiwitz. Russell married Brandie Eben and moved to a neighboring town. Brandie and Daniel were previously married and have one child together, who now lives with Brandie and Russell. Nichole has an adult son from a prior relationship, who

---

[1] The children ranged in age from fifteen to eleven at the time of the modification trial.

lives with her, Daniel, and the three children at issue in this modification proceeding.

Since the dissolution decree the children have switched from private to public school in the same town. The youngest child suffered a depressive episode requiring hospitalization for two weeks. There have been two founded child abuse investigations against Nichole. One investigation involved the child of Brandie and Daniel, while that child was in Nichole's care. The other investigation involved the youngest child of the parties who received bruises on her leg from Nichole hitting her with a hairbrush.[2]

Two of the children have been attending counseling sessions and have been involved in behavioral intervention services. Nichole has been solely responsible for arranging and making sure the children attend their medical and behavioral therapy appointments. The children are also involved in a number of extracurricular activities and sports. While Nichole allows the children to select the activities they want to be involved in, she does insist on them honoring their commitments. During Russell's visitation time, the children regularly miss attending these commitments. Russell explains that the children do not want to attend these activities when they are with him or Nichole does not provide him adequate notice of the activities.

In addition to the testimony from the parties, the court heard the testimony of the children in camera during the modification trial. All the children expressed

[2] Prior to the dissolution, Russell also had founded child abuse investigations involving the youngest child at issue here and involving Nichole's oldest child from a previous relationship. The district court described the parties as having had "extensive histories of founded child abuse complaints," and the court noted the parties are accomplished at "gaming" the juvenile court system for their personal advantage.

a desire to live with Russell due to the names Nichole calls them. They also wrote statements to the court expressing their desire to live with Russell and their reasons supporting their desire. The district court noted "the similarity in the testimony and the letters" and found the children were "susceptible to manipulation." It therefore placed limited weight on the children's preferences.

The court noted the "very hostile interpersonal relationship" between the parties, which was aggravated by the previous relationship of the parties' new significant others. The court stated neither party seemed capable of placing the best interests of the children ahead of their animosity toward their former spouse. This animosity was demonstrated through the parties' testimony at trial and through the evidence submitted showing the communication of the parties on social media websites.

The court found Russell had failed to show a substantial change in circumstance where the record was filled with pre-dissolution child abuse investigations perpetrated by both Russell and Nichole. In addition, the court concluded that the parties' inability to put their hostility aside made them both "less than perfect parents." But the court stated Nichole had shown an ability to seek outside assistance and was supportive of the children's activities. Therefore, the court found Russell had failed to show he could provide superior care or would administer more effectively to the children's needs.[3]

---

[3] The court also denied Nichole's counterclaim seeking to remove Russell's midweek visitation, to remove her obligation to provide information to Russell regarding the children's special activities, and to require Russell to be current on his child support before he would be able to claim any tax exemption.

**II. Modification of Physical Care.**

On appeal, Russell claims he should have been granted the physical care of the children. He claims the district court did not give adequate weight to the desires of the children who were of a sufficient age to state their preference. He also claims the recent founded child abuse investigations against Nichole demonstrate the need to protect the children from Nichole. He claims Nichole has refused on multiple occasions to provide him with the visitation ordered by the decree,[4] and she refuses to provide him necessary information about the children as a joint legal custodian. He specifically asserts Nichole failed to give him information regarding the hospitalization of the youngest child, the instructions on the proper administration of medication for the children, the details about the medical and mental health treatment the children are receiving, and the extracurricular activities the children are involved in.

Our review of a modification action is de novo as the case was heard in equity. *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004). We give weight to the district court's factual findings, especially its credibility assessments, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). In order to modify the physical care provisions of a dissolution decree, a party must prove "there has been a substantial change in circumstances since the time of the decree not contemplated by the court when the decree was entered, which is more or less permanent and relates to the welfare of the child." *Malloy*, 687

---

[4] Russell did file a contempt action against Nichole for her refusal to provide the visitation. This contempt action was dismissed by the district court prior to the modification trial. The court concluded the evidence offered was in "equipoise" and therefore Russell failed to sustain his burden of proof beyond a reasonable doubt.

N.W.2d at 113. The party seeking to change the physical care has a heavy burden and must prove that he has the ability to provide superior care. *Id.*

The district court gave the preferences of the children little weight because it considered them to be susceptible to manipulation. It noted the letters the children had written and the testimony given in camera were similar to each other. The behavioral specialist working with the children confirmed the children were susceptible to manipulation, even engaging in such behavior themselves. While the children denied being coached or prompted to provide their testimony, the court was particularly wary to give their preference controlling sway. Iowa Code section 598.41(3)(f) (2011), provides the court with the ability to consider a child's preference as one factor in making a determination of which care arrangement is in the child's best interests. The court is to consider the child's age and maturity level in considering the child's preference. Iowa Code § 598.41(3)(f). Generally, the child's preference is entitled to less weight in a modification action than in an original proceeding. *In re Marriage of Hunt*, 476 N.W.2d 99, 101 (Iowa Ct. App. 1991). The district court's assessment of the credibility of the children is also entitled to some weight as the court was present to hear the testimony and view the demeanor of the children. *See id.* at 102.

While there were two recent founded child abuse investigations against Nichole, we note, as did the district court, that the parties are not strangers to the involvement of the department of human services. Before the parties separated, Russell had two investigations and Nichole was ordered to have only supervised visitation with the children for approximately six months during a child-in-need-of-assistance case. Despite the difficult history between the parties, Russell

stipulated in the dissolution proceeding to place physical care of the children with Nichole. While the new founded cases against Nichole are concerning, they certainly do not amount to a substantial change in circumstances in this case. As the district court noted, "[T]hese parties, with their long familiarity with the juvenile court system, are accomplished in gaming the system for their personal advantage."

It is important that both parents support the other parent's relationship with the children. *See* Iowa Code § 598.41(3)(e). In this case, the record is clear that neither parent has supported the children's relationship with the other party and the children have all suffered the consequences. Russell claims that Nichole has regularly denied him visitation, especially his midweek visitation during the summer. The district court found the evidence of the denial of visitation insufficient during the contempt proceeding prior to the modification trial. While the burden of proof is higher in contempt proceedings, we do not find Russell's allegations sufficient to justify a modification of the physical care arrangement. Russell has received regular visitation under the decree and has not been completely denied access to his children. *See In re Marriage of Barry*, 588 N.W.2d 711, 713 (Iowa Ct. App. 1998).

Finally, it is clear these parties do not communicate well. In fact, Nichole sought to modify the decree to relieve her of the obligation to provide information about the children to Russell, claiming Russell could find out this information on his own from the school and various healthcare providers. The district court denied Nichole's request. Despite this communication problem, Russell failed to

show that the communication between the parties would improve if he were granted physical care.

He has also failed to prove he would provide superior care. The children were established in their current schools. A transfer of care would require them to move to a different school district. Nichole took an active interest in the extracurricular activities of the children and ensured their participation once they committed to attending. The evidence indicated that Russell did not ensure the children's participation, though he stated the children often did not want to go or he had not been adequately informed of the activities.

Based on all of the evidence in the record, we agree with the district court's assessment that Russell has failed to sustain his burden of proof in this modification action. We therefore affirm the district court's refusal to modify the physical care arrangement in the dissolution decree.

## III. Appellate Attorney Fees.

Nichole requests an award of appellate attorney fees in this case.

> Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."

*In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (citation omitted). Considering the merits of the appeal and the ability of the parties to pay, we award Nichole $1000.00 in appellate attorney fees.

Costs on appeal are assessed against Russell.

**AFFIRMED.**