**IN THE COURT OF APPEALS OF IOWA**

No. 18-0901
Filed February 6, 2019

**IN RE THE MARRIAGE OF AMBER BURINGTON
AND CHRISTOPHER BURINGTON**

**Upon the Petition of
AMBER BURINGTON,**
        Petitioner-Appellant,

**And Concerning
CHRISTOPHER BURINGTON,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Winneshiek County, Richard D.

Stochl, Judge.


        Amber Burington appeals the physical care and property division provisions

of the parties' dissolution decree. **AFFIRMED AS MODIFIED.**



        Laura J. Parrish of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C.,

Decorah, for appellant.

        Beth A. Becker of Tremaine & Becker Law, Sumner, for appellee.



        Considered by Tabor, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Amber Burington appeals certain provisions of the decree dissolving her marriage to Christopher (Chris) Burington.  We affirm the district court's decision placing the children in the parties' joint physical care.  We find the court did not improperly value the assets awarded to Chris and no offset needs to be made for the cash values of the parties' life insurance policies.  The property division should be modified to set aside to Amber $20,000 from the value of her 401(k) account in recognition of her premarital assets.  In order to equalize the parties' 401(k) accounts, Chris should receive $11,899 from Amber's 401(k) through a qualified domestic relations order.  We affirm the district court's decision denying Amber's request to require Chris to maintain a life insurance policy naming the children as beneficiaries.  We determine each party should pay his or her own appellate attorney fees.

### I.      Background Facts & Proceedings

Chris and Amber were married in 2008.  They have two children, N.B., born in 2010, and H.B., born in 2015.

The parties lived in Cedar Rapids for several years.  Throughout the marriage, Amber has worked for Transamerica Life Insurance Company as an accountant, earning about $80,000 per year.  Chris was initially employed as an auto mechanic, but he later quit his job and started a business driving a limousine, which he purchased contrary to Amber's wishes.  The limousine business was never financially successful.  In 2014, the parties moved to northeast Iowa, where they both had family.  Amber now works remotely, although she is required to travel

to Cedar Rapids a few times a year for business. Chris obtained employment as an auto mechanic for Einck's Services, where he earns about $35,000 annually.[1]

The parties separated in the spring of 2016. Soon thereafter, Chris purchased a stock car and trailer. He stated he traded in a motorcycle he owned prior to the marriage for the stock car. One of Chris's hobbies is stock car racing. He spends every Friday evening from May to August attending races. Chris was also involved in a pool league on Wednesdays.

In June 2016, Amber made gifts to family members from bank accounts held in her name. She gave her sister, Nichole Ackerson, $10,000 to use towards a down payment on a house. Amber also gave her parents $13,000. She also took all of the money out of two joint accounts—$578.08 from one account and $9017.28 from another—which she used to pay her student loans, the debt on a vacuum cleaner, and other expenses. Amber informed Chris she was closing the joint bank accounts.

Amber filed a petition for dissolution of marriage on July 5, 2016. In an order on temporary matters filed on September 7, 2016, the district court placed the children in Amber's physical care, granting Chris visitation on alternating weekends and two evenings each week. Chris was ordered to pay child support of $685 per month. The dissolution trial was held on August 30 and 31, 2017.

---

[1] Chris no longer operates the limousine business. He testified he might sell the limousine in the future. The parties continued to pay debt associated with acquiring the limousine, insurance premiums, and storage fees.

In the dissolution decree,[2] filed on April 11, 2018, the district court granted the parties joint legal custody of the children and joint physical care.[3] Amber was ordered to pay $439 per month in child support. The court set aside to Chris as premarital assets: (1) the stock car, valued at $3000, because it was obtained by trading in a motorcycle Chris owned before the marriage; (2) Chris's tools, except for tools worth $5000, which the court found he acquired during the marriage; and (3) an IRA valued at $1341. Amber's pension from the State of Minnesota, which accrued before she married Chris, was set aside to her. Not including the parties' retirement funds, the court awarded Chris assets worth $16,670 and Amber assets worth $16,164. The court found, however, Amber dissipated assets worth $23,000 by the gifts to her sister and parents, and it ordered Chris would receive one-half of this amount—$11,500—from the sale of the parties' home, with the remainder of the proceeds divided equally. Additionally, the court determined Chris would receive $21,899 from Amber's 401(k), equalizing the amounts each party had in a 401(k) account.

Amber filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), asking the court to reconsider placing the children in the parties' joint physical care, rather than in her physical care. Amber also requested the court take into account

---

[2] The district court made some factual errors in the decree. At the time of the decree, N.B. was seven years old and H.B. was two. The hearing on temporary matters was held on September 6, 2016. Also, the court's finding, "On one occasion, [Amber] premised a visit on Chris buying breast milk from her to feed the child," is not supported by the record; Chris testified on cross-examination he did not remember the incident and did not know if Amber had been telling him he needed to purchase formula to feed H.B. during visits when she was an infant.

[3] The court ordered the parties to submit a joint parenting plan within sixty days after the court's decree was filed. Until the parties reached an agreement about a parenting plan, the parties would exchange the children at 6:00 p.m. each Sunday.

the parties' life insurance policies in the property division and set aside to her the $20,000 that she brought to the marriage. Chris resisted Amber's motion. The court determined each party would be awarded the life insurance policies held in his or her name. The court denied the other issues Amber raised in her rule 1.904(2) motion. Amber now appeals.

## II. Standard of Review

Our review in dissolution cases is de novo. Iowa R. App. P. 6.907; *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). We examine the entire record and determine anew the issues properly presented. *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). We give weight to the factual findings of the district court but are not bound by them. *In re Marriage of Geil*, 509 N.W.2d 738, 740 (Iowa 1993).

## III. Physical Care

Amber claims the district court should have granted her physical care of the children rather than placing them in the parties' joint physical care. She states she was the primary caregiver for the children during the marriage. Amber believed Chris prioritized spending time on his hobbies rather than spending time with the children. Amber testified the parties had poor communication. She stated Chris sometimes would not respond when she contacted him about parenting issues. She also stated Chris did not always permit the children to talk to her on the telephone when she called during his parenting time.

Joint physical care may be awarded if either parent requests it and it is in the best interests of the child. Iowa Code § 598.41(5)(a) (2016). For joint physical care, we consider several factors:

(1) "approximation"—what has been the historical care giving arrangement for the child[ren] between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (quoting *In re Marriage of Hansen*, 733 N.W.2d 683, 697 (Iowa 2007)).

In considering the issue of physical care, our controlling consideration is the best interests of the child. Iowa R. App. P. 6.904(3)(o); *In re Marriage of Barry*, 588 N.W.2d 711, 712 (Iowa Ct. App. 1998). Our objective is "to place the child in the environment most likely to bring th[e] child to [a] healthy physical, mental, and social maturity." *In re Marriage of Kunkel,* 555 N.W.2d 250, 253 (Iowa Ct. App. 1996).

On the issue of physical care, the district court stated:

The parties are awarded joint legal custody of their minor children and shared physical placement. Each is capable of meeting the physical and emotional needs of the children and have demonstrated the ability to communicate in the best interest of both of their daughters. The court is mindful that this change dramatically increases the amount of time the children will spend with their father. That is in their best interest. Based on the testimony and Amber's proposal to only allow Chris one overnight every-other week, continuing the current arrangement would greatly limit the relationship between the girls and their father. There is no reason why Chris should not be able [to] spend equal time with his children.

We agree with the district court's conclusion joint physical care is in the children's best interests because it will be beneficial for the children to spend equal time with each parent. Although the parties have had some problems communicating, they both showed an understanding of the need to communicate about the children. We are hopeful the parties will continue to improve and

respond to each other in a prompt, respectful manner, which will benefit the children. We also hope the parents will recognize and support each other's relationship with the children, including permitting telephone calls from the other parent while the child is in the parent's care.[4] We affirm the district court's decision placing the children in the parties' joint physical care.

### IV. Property Division

Amber claims the decree's property division was not equitable. "Section 598.21(1) requires 'all property, except inherited property or gifts received by one party,' to be equitably divided between the parties." *Fennelly*, 737 N.W.2d at 102. Factors the court considers include the length of the marriage, contributions of each party to the marriage, the age and health of the parties, each party's earning capacity, property brought to the marriage, and any other factor the court may determine to be relevant to any given case. *Id.* "Although an equal division is not required, it is generally recognized that equality is often most equitable." *Id.* (citation omitted).

**A.** Amber claims the court did not place an adequate value on the assets awarded to Chris. The court found Chris had tools worth $5000 that were marital assets. Amber states the value of the tools Chris purchased during the marriage was $14,000. Chris, who used the tools for his employment, testified he was willing to sell his tools for $5000. Amber also claims the court did not

---

[4] Chris testified he did not always answer the telephone when Amber called to talk to the children when they were in his care if it was not a convenient time for them to talk to her. It might be the better practice for him to answer the telephone, inform Amber it was not a convenient time, and suggest a better time for her to call. Additionally, the parties could set up a scheduled time for Amber to call the children when they are in Chris's care and for Chris to call the children when they are in Amber's care, thereby giving both parties the opportunity to stay in contact with the children.

adequately take into account a high-performance engine in a truck owned by Chris. She does not suggest a value for the engine. The parties stipulated the truck was worth $1500. We will not disturb the district court's valuation of assets when they are within the range of permissible evidence. *In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013). We make no adjustment to the value of the assets awarded to Chris.

**B.** Amber states the court should have taken the cash value of the parties' life insurance policies into consideration when dividing the property. Amber claims she had a life insurance policy with a cash value of $1199, while Chris had two policies, one with a value of $9047 and the other with a value of $1877. Amber claims these amounts should be equalized, so she should be awarded $4862.50. Chris states his policies had values of $1298 and $6492.86. He also notes Amber had a policy with a cash value of $5545.62, which she liquidated prior to the dissolution. The district court awarded Amber her life insurance policy and Chris his policies. The court found Amber had cashed out one of her policies and had not adequately accounted for the proceeds We agree with the court's conclusion the property division should not be modified based on the difference in the cash values of the parties' life insurance policies.

**C.** Amber claims the property division was inequitable because the court set aside to Chris the value of his premarital assets but did not give the same consideration to the assets she brought to the marriage. The court set aside to Chris a stock car worth about $3000, the value of his tools beyond $5000, and an IRA valued at $1341. The court set aside to Amber her Minnesota pension based on employment prior to the marriage. Amber testified she brought to the marriage

$20,000 in a bank account and household furnishings. Chris was asked, "Do you remember [Amber] having a significant amount of cash coming into the marriage?" and he replied, "Yes. I believe she had some saved up. How much, I don't remember." He also stated she had a complete set of household furnishings when they married.

Premarital property is not automatically awarded to the spouse who brought it to the marriage. *Fennelly*, 737 N.W.2d at 102. "Property which a party brings into the marriage is a factor to consider in making an equitable division." *In re Marriage of Miller*, 552 N.W.2d 460, 465 (Iowa Ct. App. 1996) (citing Iowa Code § 598.21(1)(b)). In some circumstances, "this factor may justify a full credit, but it is not required." *In re Marriage of Wendell*, 581 N.W.2d 197, 199 (Iowa Ct. App. 1998). We note, "the claim of a party to the premarital property owned by the other spouse in a short-term marriage is 'minimal at best.'" *In re Marriage of Hansen*, 886 N.W.2d 868, 872 (Iowa Ct. App. 2016) (quoting *In re Marriage of Dean*, 642 N.W.2d 321, 326 (Iowa Ct. App. 2002)).

The parties were married for ten years. Under the circumstances of the case, we determine it was equitable for the court to set aside to the parties the property they brought to the marriage. This should include recognition of the $20,000 Amber had at the time of the marriage. At the time of trial, Chris had a 401(k) worth $56,424 and Amber had a 401(k) worth $100,222. The court ordered $21,899 from Amber's 401(k) should be given to Chris in order to equalize the accounts. We determine $20,000 from Amber's 401(k) should be set aside to her in recognition of her premarital property. This leaves $80,222 as marital property in her 401(k). In order to equalize the accounts, the amount Chris should receive

from Amber's 401(k) through a qualified domestic relations order is reduced to $11,899. We modify the decree to make this change.

## V. Life Insurance Policy

Amber claims Chris should be required to maintain a life insurance policy on his life, naming the children as beneficiaries. She states this would ensure the needs of the children would be met in case Chris died. A provision in a dissolution decree requiring a party to maintain a life insurance policy payable to the party's children is enforceable. *In re Marriage of Mayfield*, 477 N.W.2d 859, 863 (Iowa Ct. App. 1991). Such a requirement should not be imposed, however, when it is unnecessary. *See In re Marriage of Farrell*, 481 N.W.2d 528, 531 (Iowa Ct. App. 1991) (noting the children would receive social security benefits in the event of their father's death).

The district court ruled it would not require the parties to maintain life insurance. We agree with the court's conclusion, as the evidence does not show a life insurance policy would be necessary to provide for the children if Chris died. *See id.* Furthermore, Chris testified he did not have sufficient money to obtain a new life insurance policy. We affirm the district court's decision denying Amber's request to require Chris to maintain a life insurance policy naming the children as beneficiaries.

## VI. Attorney Fees

Both parties seek attorney fees for this appeal. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005)). We consider "the needs of the party seeking the

award, the ability of the other party to pay, and the relative merits of the appeal."
*Okland*, 699 N.W.2d at 270 (quoting *Geil*, 509 N.W.2d at 743). We determine each party should pay his or her own appellate attorney fees.

We affirm the district court's decision placing the children in the parties' joint physical care. We find the court did not improperly value the assets awarded to Chris and no offset needs to be made for the cash values of the parties' life insurance policies. The property division should be modified to set aside to Amber $20,000 from the value of her 401(k) account in recognition of her premarital assets. In order to equalize the parties' 401(k) accounts, Chris should receive $11,899 from Amber's 401(k) through a qualified domestic relations order. We affirm the district court's decision denying Amber's request to require Chris to maintain a life insurance policy naming the children as beneficiaries. We determine each party should pay his or her own appellate attorney fees. Costs of this appeal are assessed to Amber.

**AFFIRMED AS MODIFIED.**