## IN THE COURT OF APPEALS OF IOWA

No. 21-1639
Filed August 17, 2022

**ELIJAH BLUE HOYT,**
    Plaintiff-Appellant,

**vs.**

**AUGUST MARIE SEGOVIA,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Union County, Elisabeth Reynoldson, Judge.

A father challenges a decree awarding the mother physical care of their five-year-old son. **AFFIRMED.**

Colton P. Schnepf and Gary Hill of Family Law Solutions of Iowa, LLC, Des Moines, for appellant.

August M. Segovia, Des Moines, self-represented appellee.

Thomas J. Miller, Attorney General, and Justin D. Walker, Assistant Attorney General, for appellee State of Iowa Child Support Recovery.

Considered by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**TABOR, Judge.**

Elijah Hoyt appeals the decree awarding August Segovia physical care of their child, C.B.H. Elijah contends he is better able to serve the child's long-term interests. After considering C.B.H.'s continuity of care and educational needs, we affirm the district court.

## I.     Facts and Prior Proceedings

Elijah and August began dating in high school. When August became pregnant with C.B.H., she moved in with Elijah's family in Creston. C.B.H. was born in 2016 and the family of three relocated to an apartment in Orient. But that situation did not last. August moved with C.B.H. to her aunt's house after Elijah broke a window in a burst of anger. After five months, the parents reconciled, and Elijah joined them at the aunt's house. A few months later, the family again moved to their own apartment.

Their housing flux did not stop the parents from completing their high school educations and finding jobs to support their child. Elijah has a longer work history, though he has weathered periods of unemployment tied to layoffs or medical concerns. August has maintained steady employment—most recently as an in-home care provider. Both parents have relied on their families for financial support and help with childcare.

Still unmarried, the parents' relationship grew contentious in 2020. August made plans to move with C.B.H. to Texas where her father lived. She secured housing and applied for jobs there. After August told Elijah about her impending move, he took C.B.H. to his father's house in Shannon City. In reaction, August showed up with several family members to retrieve the boy. An altercation ensued

between the families, prompting a call to police. The police told August they could not remove the child from his father. Afterward, August obtained a protective order against Elijah, and C.B.H. was returned to her care. Elijah then called the Department of Human Services (DHS) to report August for child abuse.[1] The next day, August moved to Texas with C.B.H.

August and C.B.H. lived together in Texas for about nine weeks.[2] While they were gone, Elijah petitioned to establish custody, visitation, and child support. The court entered an order on temporary matters based on the parties' stipulated agreement. Elijah and August agreed to joint legal custody and a mutual protective order. And they agreed that C.B.H. would stay with Elijah in Creston during the summer of 2020 to balance the time that August had sole care in Texas.

In August 2020, the district court entered a second order on temporary matters. The court granted Elijah temporary physical care and ordered August to pay child support. The parties entered a stipulated agreement modifying that arrangement in late October 2020 after August relocated to Des Moines.

The court held a final hearing on Elijah's petition in September 2021. After hearing evidence from both sides, the court found August was better able to provide for C.B.H.'s long-term success and awarded her physical care. On appeal, Elijah requests physical care.[3]

---

[1] The DHS investigated and found the allegation was not confirmed.

[2] In June 2020, August returned C.B.H. to Creston. She would move back to Iowa herself in October.

[3] Elijah's initial petition requested shared care. At trial, he requested primary physical care. The district court noted that even if he had not changed his request, the distance between Creston and Des Moines made shared care unfeasible.

## II.     Scope and Standard of Review

The district court tries custody matters in equity, and we review equitable proceedings de novo.  Iowa R. App. P. 6.907.  We review the entire record with fresh eyes and make our own ruling on the legal and factual issues presented by the parties.[4]  *See In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998).  We give weight to the findings of the district court but are not bound by them.  *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).  Key to our decision here, we recognize that the district court had the best opportunity to see the parties and make credibility determinations.  *See In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984).

## III.     Analysis

In determining physical care, we place the child's best interests above all other considerations.  *See* Iowa R. App. P. 6.904(3)(o).  We apply the same principles to custody decisions for married and unmarried parents.  *See* Iowa Code § 600B.40(2) (2021) (cross-referencing Iowa Code section 598.41).  And we are guided by the factors listed in Iowa Code section 598.41(3) and those enumerated in our case law.  *See, e.g.*, *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974); *see also In re Marriage of Hansen*, 733 N.W.2d 683, 696─97 (Iowa 2007).  Not all factors deserve equal attention.  *In re Marriage of Daniels*, 568 N.W.2d 51, 54 (Iowa Ct. App. 1997).  The weight we assign to each factor depends on the particular facts of each case.  *Id.*

---

[4] Only Elijah was represented by counsel at the trial and on appeal.  August represented herself at trial and waived her chance to file a brief on appeal.

On appeal, Elijah contends the district court awarded physical care to August "without a thorough analysis" of the relevant factors. In particular, he complains that the court did not give enough weight to "stability and continuity of caregiving" in a child's life. Drilling down, Elijah argues that C.B.H.'s ties to Creston should play a larger role in our analysis.

We are not persuaded. Granted, C.B.H. has spent most of his life in Creston and attended two years of preschool there. And true, he has family and friends in Creston who have supported him in his early years. But on the other side of the coin, August has family in Des Moines with whom C.B.H. also has a strong connection. When the decree issued, C.B.H. was just starting kindergarten. As the district court recognized, all kindergartners are "navigating changes as they begin a new phase of life." Moving C.B.H. to Des Moines did not seriously disrupt his stability at home or at school. The record shows that C.B.H. will be able to maintain meaningful connections in both Creston and Des Moines.

We also give weight to the division of parenting duties before the parties' separation. *See Hansen*, 733 N.W.2d at 698. Even before moving to Texas, August was C.B.H.'s primary caregiver. Although Elijah's parenting role increased after the court awarded him temporary physical care, the final decision to award physical care to August replicates how C.B.H. spent most of his early years. Elijah argues that continuity of care weighs in his favor because of the interim period. But his argument discounts the history.

In another critique of the decree, Elijah insists the district court overemphasized concerns about C.B.H.'s spotty preschool attendance and personal hygiene when in his care. But like the district court, we see these matters

as indicators of stability. *See Winter*, 223 N.W.2d at 166 (considering capacity of each parent to provide for child's social, material, and educational needs). While in Elijah's care, C.B.H. was often absent from preschool. His teachers noticed delays in his learning benchmarks and recommended repeating the year so he could catch up with his peers. The school also noted occasional lapses in C.B.H.'s cleanliness. No doubt, Elijah is interested in promoting C.B.H.'s happiness and sense of adventure. But August has shown that she will place a higher priority on C.B.H.'s school attendance and personal hygiene, which are important to his growth and development.

As Elijah acknowledges, both he and August are suitable custodians. In a close case like this, we rely even more heavily on the district court's opportunity to view the parties in person. We defer to its observations that the parties communicate well and will each foster C.B.H.'s relationship with the other parent. C.B.H. loves spending time with each parent, and each parent has curated a home environment with his safety and happiness in mind. But the record shows us that August has paid closer attention to C.B.H.'s prospects for future educational success. With C.B.H.'s best interests in mind, we find that August should have physical care. Accordingly, we affirm the district court.

**AFFIRMED.**