**IN THE COURT OF APPEALS OF IOWA**

No. 24-2073
Filed March 5, 2025

**IN THE INTEREST OF W.H.,**
**Minor Child,**

**C.H., Father,**
     Appellant.
_____

     Appeal from the Iowa District Court for Dallas County, Virginia Cobb, Judge.


     A father appeals the termination of his parental rights. **AFFIRMED.**


     Nicholas Einwalter, Des Moines, for appellant father.

     Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

     Paul White, Juvenile Public Defender's Office, Des Moines, attorney and guardian ad litem for minor child.


     Considered by Greer, P.J., and Langholz and Sandy, JJ.

**GREER, Presiding Judge.**

The juvenile court terminated the father's parental rights to his child under Iowa Code section 232.116(1)(f) and (g) (2024). The father argues termination of his rights was inappropriate under section 232.116(1)(f) because the State failed to show clear and convincing evidence the child could not be returned to his custody at the time of the termination trial. Under section 232.116(1)(g), he argues the State failed to prove the father lacked the ability or willingness to respond to services and an additional period of rehabilitation would not correct the situation. Finally, the father argues termination was not in the best interests of the child. In the alternative, the father asks this court to apply a permissive exception to termination under section 232.116(3). After review, we find evidence on the record sufficient to terminate the father's rights under section 232.116(1)(f), termination is in the best interests of the child, and no permissive exception applies.

We review proceedings for termination of parental rights de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We use a "three-step" framework:

> First, we determine whether any ground for termination under section 232.116(1) has been established. If we determine that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights. Finally, if we conclude the statutory best-interest framework supports termination, we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights.

*In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (cleaned up). This court may affirm termination on any of the statutory grounds we find supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

**A. Statutory Framework.**

One statutory ground is sufficient for termination; so we focus our review on section 232.116(1)(f). *See In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015) ("When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm."). The father argues the juvenile court was wrong to conclude termination was justified under section 232.116(1)(f), which allows for termination when

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Our courts construe "at the present time" in subparagraph (4) to mean at the time of termination proceedings. See *A.S.*, 906 N.W.2d at 473.

The father concedes the first three elements of section 232.116(1)(f) were established by clear and convincing evidence. The father contests the fourth element, arguing "while [the child] was out of his care for twelve of the last eighteen months, clear and convincing evidence does not exist to support the finding that [the child] cannot be returned to the custody" of the father. But at the termination trial, the father asked the court to direct a bridge order to be entered to allow visitation with the child "to get us back together where we're not—where she's familiar with me." As the father recognized, there was a lapse in the parent-child relationship. In the last eleven months before the termination trial, the father had

only seen the child three times in a supervised setting; his perception regarding familiarity was accurate. Most telling, after the permanency hearing in September 2024, six visits with the child were offered but the father took advantage of none of them. The last visit exercised by the father before the December termination trial was in March 2024. *See, e.g.*, *In re L.H.*, 13 N.W.3d 627, 629 (Iowa Ct. App. 2024) ("[H]e never progressed beyond fully-supervised visits, which also prevented an immediate return of custody."); *In re T.H.*, No. 20-0267, 2020 WL 4201816, at *4 (Iowa Ct. App. July 22, 2020) (recognizing child could not be returned to parent's custody when parent's "participation in visitation was sporadic and ineffective," which resulted in limited interactions with the children and inability to gain needed parenting skills).

But even without this lack of connection with the child, we conclude the child could not be returned to the father's custody because of his unaddressed issues of domestic violence, substance use, and mental illness. In fact, the father stopped communicating or responding to the Iowa Department of Health and Human Services (HHS) social worker assigned to the case. Failure to cooperate with services required, coupled with cutting off contact with the child, provides clear and convincing evidence that at the time of the termination trial the child could not be returned to the custody of the parent. *See In re C.B.*, No. 04-0165, 2004 WL 573948, at*3 (Iowa Ct. App. Mar. 24, 2004) (finding that after the parent cut herself off from contact with the child and HHS providers, clear and convincing evidence for termination was supported).

On top of the lack of contact, in a detailed report to the court, HHS outlined the father's lack of engagement in addressing concerns over his drug use and his

mental health, which included anger management. Unresolved drug use is sufficient to find a child cannot be returned to the custody of a parent under section 232.116(1)(f)(4). *See In re R.M.-V.*, 13 N.W.3d 620, 626 (Iowa Ct. App. 2024) (finding termination was proper when "[t]he mother has a long history of unresolved drug use."). With regularity, the juvenile court found unaddressed drug use in the home is sufficient to adjudicate a child in need of assistance, satisfying the incorporated language of section 232.102(4)(a)(2). *E.g.*, *In re R.P.*, No. 20-1348, 2021 WL 211624, at *1 (Iowa Ct. App. Jan. 21, 2021) ("Citing their father's habitual drug use and 'his willingness to keep and distribute large amounts of methamphetamine from the premises of the family home,' the juvenile court adjudicated [the children] as children in need of assistance (CINA)."); *In re S.A.M.*, No. 06-1968, 2007 WL 257943, at *1 (Iowa Ct. App. Jan. 31, 2007) (discussing two children subject to CINA proceedings due to "allegations their mother was using illegal drugs in their presence"). Because of previous admissions over drug use and recommendations from treatment providers for care, HHS required drug testing from the father. For example, Nebraska HHS identified the father as having "a high probability for substance abuse disorder." In the past, he received treatment for substance use, but according to the father and HHS, the father had not been involved in substance-use treatment in the year and a half preceding the termination hearing. In July 2022, HHS first became involved and requested the father complete a substance-use evaluation. He did not comply. HHS continued to request drug testing throughout the pendency of proceedings. The father did not comply. On July 15, 2024, two years after the father became involved in this matter, HHS described the father's efforts as follows: "[The father] has not

cooperated with drug testing and services recommended by [HHS]." Regardless, HHS offered residential and outpatient substance-use treatment to the family. Again, the father did not participate. At every turn, the father repeatedly refused to address his unresolved drug use or show that he was living a sober lifestyle by refusing services offered by HHS.

Next, unaddressed mental-health issues, in conjunction with unaddressed substance use, may be sufficient to find termination under section 232.116(1)(f)(4). *See In re M.A.B.-C.*, No. 14-1396, 2014 WL 7343478, at *2 (Iowa Ct. App. Dec. 24, 2014) (finding termination under section 232.116(1)(f)(4) to be proper when a mother had unaddressed "mental health and substance abuse issues [at] the time of the termination hearing"); *In re J.B.*, No. 21-0802, 2021 WL 3661122, at *2–3 (Iowa Ct. App. Aug. 18, 2021) (affirming termination under section 232.116(1)(f) because the mother's unaddressed "poor mental health" prevented her from completing substance-use treatment.). Not unlike his past substance use, the father testified he does not receive ongoing mental-health treatment to address his multiple mental-health diagnoses, as he believes "he is no longer struggling with his mental health." In Iowa, HHS requested the father undergo a mental-health evaluation, which the father refused. Despite the absence of a formal evaluation, the HHS offered the father mental-health therapy and medication management services, which the father did not participate in. A HHS social worker assigned to the case testified the father's mental-health diagnoses indicate "he should be in— continue mental health therapy on a regular basis. . . . It should be something that he probably should be going for his type of mental health." At the time of

termination, the father had not made any efforts in the preceding year to address his documented mental-health diagnoses.

Finally, this court remains concerned about the physical safety of the child if the child returns to the custody of the father, an enumerated factor in section 232.102, incorporated through section 232.116(1)(f)(4). The father, himself, reports he has struggled with "anger issues." The record shows the father struggled with violence, including reports of domestic violence against the child's mother. In 2022, the father's latest allegation of domestic violence against his current paramour was a significant factor in Nebraska HHS's decision to decline an Interstate Compact on the Placement of Children order. Although the father completed a "batterer's intervention class," this court remains unconvinced the father permanently resolved his triggers for domestic violence. This conclusion is bolstered by the social worker's report to the court before the termination trial, where the HHS employee cited the father's aggressive and negative behavior towards professionals. As the worker stated in the report, "[the child] should not have to worry about [the father] striking out at her." We cannot find the child could be safely returned to the father's custody at the time of the termination trial.

We find clear and convincing evidence on the record to support terminating the father's parental rights under section 232.116(1)(f).

**B. Best Interests.**

If this court finds a statutory ground for termination, we must still address whether termination of parental rights is in the best interest of the child. *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) ("Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the

children's best interests."). We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)).

If the father maintains his parental rights, the father does not take issue with the child remaining in the mother's care; he asks this court for a bridge order that allows him visitation with the child. We find, after reviewing record evidence, a bridge order is not in the best interest of the child. A bridge order, at bottom, requires two parents to work together to arrange custody, physical care, and visitation. *See* Iowa Code § 232.103A. In this matter, the mother and father should not have contact, as "[d]omestic abuse is, in every respect, dramatically opposed to a child's best interests." *In re Marriage of Daniels*, 568 N.W.2d 51, 55 (Iowa Ct. App. 1997).

Finally, we note the father has had ample time to show that he is a safe and committed parent for the child. HHS became involved with the father in July of 2022, and since that time, he has made few meaningful efforts. While the father points to his progress in Nebraska in regaining rights to his other children, the court required cooperation with the directives from the Iowa HHS that would establish his ability to be a safe and stable caregiver. Instead, he withdrew from consistent contact with the child and avoided all requirements to show his progress here. Iowa courts will not delay or decline to enter an order for termination in the hopes "someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (citation omitted).

After reviewing the facts on record, we find the termination of the father's parental rights is in the best interests of the child.

**C. Permissive Exceptions.**

Finding a statutory basis for termination and that termination is in the best interest of the child, we affirm the juvenile court's decision to terminate parental rights unless a permissive exception applies. The father summarily claims two exceptions apply, termination would be detrimental to the child, under section 232.116(3)(c) and the child is in the legal custody of a relative, under section 232.116(3)(a).

The exceptions enumerated in section 232.116(3) are permissive, not mandatory. *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011). "We may use our discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *M.W.*, 876 N.W.2d at 225 (citation omitted). "[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception." *A.S.*, 906 N.W.2d at 476.

**Parent-Child Bond**

The father argues that termination is inappropriate under section 232.116(3)(c), which allows a juvenile court to decline to terminate parental rights on proof "that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." After reviewing the evidence on record, we find that no relationship exists between the child and her father at the time of termination. This permissive exception does not apply.

During the termination hearing, the social worker testified:

> Q. [The father h]asn't meaningfully cooperated with visits?
> A. Correct.
> Q. To the point where the relationship between the child and the father has deteriorated to where she doesn't even really know who he is? A. Right.

The testimony is echoed by HHS's case summary for July 15, 2024, which states in part, "[The father] has not cooperated with drug testing and services recommended by [HHS]. What strides he may have made towards a relationship with [the child] have been lost due to [the father] not trying to maintain some level of contact with [the child]." The deterioration of a relationship between the young child and her father is emblematic of the father's failure to visit the child since March 7, 2024, nearly eight months before the termination hearing. The child, four years old at the time of termination, would likely have difficulty bonding with her father without regular contact over the preceding year and, as a result, had no discernible parent-child relationship with her father at the time of termination. This permissive exception does not apply.

**Care of a Relative**

On April 17, 2024, the mother regained custody of the child. Since that time, the mother has lived in the child's maternal grandmother's home and maintained the care and custody of her child under the supervision of HHS. This custody arrangement satisfies the language of section 232.116(3)(a), "A relative has legal custody of the child." Because the exception is permissive, we ask if it is in the best interests of the child to exercise an exception to termination.

We find it is not in the best interests of the child to exercise a permissive exception to termination. "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family

relative to take the child. The child's best interests always remain the first consideration." *See In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). The mother has remained sober and employed since April of 2024. As a sign of the mother's success, the child has adjusted to living with her mother and grandmother in the grandmother's home. When asked whether an "ongoing relationship" with the father would threaten the mother's "ability to remain sober," the social worker replied:

> I know that it's a lot of stress for her, I would say, to have to continue, you know, to deal with him. I think that, you know, since he did have—they had a domestic incident, I think that, you know, there's a fear of another one that could happen. There's probably a fear that he wouldn't bring her home. I think there are some fears that she would have.

The stability of the mother-child relationship rests on the mother's ability to maintain her sobriety. *See In re W.M.*, 957 N.W.2d 305, 314 (Iowa 2021) ("[W]e cannot deprive these children of a stable home on the hope that Mom will someday be able to succeed in her efforts to remain sober."). Creating an environment that is ripe for the mother's relapse is not in the best interest of the child. Any relationship between the mother and father threatens the safety and stability of the child's home. The father's unwillingness to visit his daughter since March 7, 2024, indicates a clear dearth of effort and lack of desire to maintain a relationship. Since the child no longer understands the father to be part of her life, maintaining parental rights would only destabilize the child. The father failed to meet his burden to establish an exception to termination.

We affirm the termination of the father's parental rights.

**AFFIRMED.**